STATE OF NEW MEXICO
COUNTY OF SAN JUAN
ELEVENTH JUDICIAL DISTRICT

FILED
DISTRICT COURT
SAN JUAN COUNTY NM
2008 SEP 29 AM 11 00

GARY STRIPLING and LOUISE PARTEN,
f/k/a LOUISE STRIPLING,

    Plaintiffs,

v.

No. CV 2006-625

SHAUNA, INC.,
GEORGE AND SHARI SULIMA,
SOLITAIRE HOLDINGS, LLC.,
DIAMOND HOME TRANSPORT, INC., and
SOLITAIRE HOME TRANSPORT, L.P.,

    Defendants.

## COURT'S FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. Plaintiff Louise Libby, f/k/a Louise Parton and Louise Stripling, resides in Farmington, New Mexico.

2. Plaintiff Gary Stripling resides in Aztec, New Mexico.

3. Defendant Shauna, Inc. is a New Mexico corporation, no longer in good standing with the State. Shauna, Inc. had sales lots in Farmington, Espanola and Albuquerque.

4. Shauna, Inc. is insolvent now and was insolvent in 2003 and 2004.

5. Defendants George and Shari Sulima ("the Sulimas") reside in Albuquerque, New Mexico. They were the sole shareholders, owners and officers of Shauna, Inc.

6. Defendant Solitaire Holdings, LLC. ("Solitaire") is a foreign corporation doing business in New Mexico as a mobile home dealership. Solitaire Holdings, LLC has mobile home lots in Albuquerque, Farmington, Deming and Espanola, New Mexico.

EXHIBIT I

7. Defendant Diamond Home Transport, Inc., is a foreign corporation doing business in New Mexico providing transportation of mobile homes.

8. Defendant Solitaire Home Transport, L.P., is a foreign limited partnership doing business in New Mexico providing transportation of mobile homes.

9. George Sulima and Shari Sulima are the sole shareholders of Shauna, Inc.

10. Shauna, Inc. was a sub-chapter-S corporation.

11. George Sulima and Shari Sulima are the only directors of Shauna, Inc.

12. George Sulima is the president of Shauna, Inc.

13. Shari Sulima is the vice-president, secretary, and treasurer of Shauna, Inc.

14. George Sulima was the general manager of Shauna, Inc.

15. George Sulima was the sole signatory on Shauna, Inc.'s checking accounts.

16. George Sulima personally guaranteed Shauna, Inc.'s floorplan with Textron Financial.

17. On 2/12/2003, the Striplings sued Shauna, Inc.

18. On 6/11/2003, the Striplings lawsuit was referred to arbitration..

19. While this case was in litigation, Shauna, Inc. entered into the Asset Purchase Agreement, dated November 1, 2003, with Solitaire Holdings, LLC, whereby Shauna, Inc. agreed to transfer all of its non-cash assets to Solitaire holdings, LLC in exchange for the payment of $421,356.26.

20. Shauna, Inc.'s non-cash assets that were transferred to Solitaire Holdings, LLC consisted of motor vehicles and trailers, three manufactured homes used as sales offices, office furnishings, office equipment, and fixtures and leasehold improvements.

21. Shauna, Inc.'s non-cash assets transferred to Solitaire Holdings, LLC, pursuant to the Asset Purchase Agreement, were valued at $421,356.26 by Shauna, Inc. and Solitaire

Holdings, LLC.

22. Solitaire Holdings, LLC made the payment of $421,356.26 directly to the Sulimas' personal bank account, New Mexico Educators Federal Credit Union account #0023427810, via wire transfer on January 23, 2004.

23. On, 3/31/2004, arbitrator William Riordan entered award on the Striplings' claims against Shauna, Inc.

24. On, 8/26/2004, this Court entered the order confirming the arbitration award.

25. The 2001 FORD, an asset transferred pursuant to the Asset Purchase Agreement, was owned by Eric Bock, not Shauna, Inc.

26. The 2000 FORD DRW, an asset transferred pursuant to the Asset Purchase Agreement, was owned by Eric Bock, not Shauna, Inc.

27. Solitaire Holdings, LLC now owns and operates the sales lots that had been owned and operated by Shauna, Inc.

28. Mr. Sulima still manages the former Shauna, Inc. sales lots.

29. Shauna, Inc., and the Sulimas, reasonably should have believed, at the time of the Asset Purchase Agreement, that Shauna, Inc. would incur debt beyond its ability to pay.

30. Shauna, Inc. actually intended to hinder, delay or defraud one or more of its creditors.

31. Shauna, Inc. received no consideration for its transfer of all of its non-cash assets to Solitaire Holdings, LLC.

32. Shauna, Inc. received no consideration for its transfer of its cash assets to the Sulimas.

33. Shauna, Inc. received no consideration for its payment of the Sulimas' personal financial obligations.

34. Shauna, Inc. failed to keep proper records of cash transfers to and from the Sulimas.

35. Shauna, Inc. sold its entire business along with its non-cash assets to Solitaire Holdings, LLC.

36. Shauna, Inc. made payments for the Sulimas' personal credit cards with checks from its Peoples Bank commercial checking account #40700886.

37. In November, 2002, Shauna, Inc. knew of the Striplings' dissatisfaction with their transaction with Shauna, Inc.

38. In 2003, Solitaire Holdings, LLC wrote checks payable to George Sulima personally for money it, or its affiliated entities, owed to Shauna, Inc.

39. In 2003, George Sulima deposited $236,764.50 of checks from Solitaire Holdings, LLC, payable to him personally, into the Sulimas' New Mexico Educators Federal Credit Union account #0023427810.

40. In 2003 and 2004, Solitaire Holdings, LLC wrote checks payable to Shauna, Inc. and to Solitaire Homes of Albuquerque (Shauna, Inc. d/b/a Solitaire Homes of Albuquerque), for money it, or its affiliated entities, owed to Shauna, Inc.

41. The Sulimas never deposited into the Shauna, Inc. corporate accounts thousands of dollars of checks from Solitaire Holdings, LLC payable to Solitaire Homes of Albuquerque (Shauna, Inc. d/b/a Solitaire Homes of Albuquerque).

42. From January 1, 2003 to January 23, 2004, the Sulimas loaned money to Shauna, Inc. The loans were made by checks written on the Sulimas' New Mexico Educators Federal Credit Union account #0023427810, payable to Shauna, Inc.

43. George Sulima retained the $421,356.26 paid by Solitaire Holdings, LLC to the Sulimas by wire transfer, in part as repayment of loans he had previously made to Shauna, Inc.

44. Subsequent to the $421,356.26 wire transfer, the Sulimas transferred $268,000 from the

Sulimas' New Mexico Educators Federal Credit Union account #0023427810, to Shauna, Inc.'s corporate accounts.

45. In 2003 and 2004 Shauna, Inc. repaid the Sulimas for loans that the Sulimas had made to Shauna, Inc.

46. Shauna, Inc. employees, from the sales lots that had been owned and operated by Shauna, Inc., remain employees of Solitaire Holdings, LLC.

47. Solitaire Holdings, LLC assumed the inventory of Shauna, Inc.

48. In 2006, George Sulima arranged to have approximately 150 boxes of Shauna, Inc.'s records professionally shredded. Approximately 10 to 15 boxes of Shauna, Inc.'s records have not been shredded.

49. In 2003 and 2004, Mr. Sulima wrote checks to himself, from Shauna, Inc.'s Bank of America account, totaling $189,200.

50. Shauna, Inc. paid bills for the Sulimas' personal credit cards for numerous personal expenses. Those expenses included:

   1. $2,500 for Congregation Albert on his credit card, paid by the business;
   2. $2,202 for Albuquerque Academy private school, on his credit card, paid by the business.

51. Shauna, Inc. paid 100% of the leases costs on two luxury cars to BMW Leasing and Mercedes Benz Leasing, for George and Shari Sulima, even though Shari did not work in the business.

52. Shauna, Inc. paid $2,445 to Crescent Jewelers in January, 2002

53. Solitaire Holdings, LLC reimbursed Shauna, Inc. for various expenses such as freight, wheels, hitches axles and tires, by issuing checks payable to Mr. Sulima personally.

Rather than endorsing and depositing many of these checks into Shauna, Inc.'s corporate accounts in 2003, Mr. Sulima deposited $236,764.50 of Shauna, Inc.'s money into the Sulimas' personal account at New Mexico Educators Federal Credit Union.

54. The Sulimas were not lienholders on a 1999 Peterbilt truck.

55. The Sulimas were not lienholders on a 1997 Top Hat Utility Trailer.

56. The Sulimas were not lienholders on a 1999 Top Hat Utility Trailer.

57. The Sulimas already had released their lien on the 1993 Freightliner in February, 2002, almost two years before the Asset Purchase Agreement.

58. No title history exists to show any lien on the 2002 Solitaire DW.

59. With respect to the 1990 Solitaire DW, no title history exists.

60. Shauna, Inc. transferred $954,819.83 to George and Shari Sulima beginning February 12, 2003.

61. The Sulimas treated Shauna, Inc.'s funds as their personal funds and they transferred money both back and forth without protecting the creditors or people that had a claim.

62. Shauna, Inc. and the Sulimas concealed from Shuana, Inc.'s creditors the transfer of Shauna, Inc.'s assets to the Sulimas.

63. In Shauna, Inc.'s bankruptcy, Shuana, Inc. inaccurately classified the transfer of assets from Shuana, Inc to the Sulimas as a foreclosure.

64. The Sulimas had no valid liens on the assets of Shauna, Inc.

65. Shauna, Inc. transferred a net amount of $379,835.03 to George and Shari Sulima in 2003 and 2004.

## Conclusions of Law

1. George and Shari Sulima are "insiders" as defined by the UFTA, NMSA 1978 § 56-10-15

(G).

2. The Plaintiffs are "creditors" as defined by the UFTA, NMSA 1978 § 56-10-15(D).

3. The Plaintiffs became "creditors," as defined by the UFTA, NMSA 1978 § 56-10-15(D), in November, 2002.

4. Shauna, Inc.'s transfers of funds to George and Shari Sulima, made after November 2002, were made to them for antecedent debt, Shauna, Inc. was insolvent at that time and George and Shari Sulima had reasonable cause to believe that Shauna, Inc. was insolvent.

5. Shauna, Inc.'s transfer of funds to George and Shari Sulima was made to them with actual intent to hinder, delay, or defraud creditors, or without receiving reasonably equivalent value, and Shauna, Inc. believed or reasonably should have believed that it would incur debts beyond its ability to pay as they became due.

6. Maintaining the legal fiction of Shauna, Inc. as a separate legal entity from the Sulimas would promote injustice.

7. Defendants' affirmative defenses are not valid and should be denied.

_____
District Court Judge

Approved as to form:

_____
Richard N. Feferman
FEFERMAN & WARREN, Attorneys for Plaintiff
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773

_____
James A. Chavez (approved by email 9/26/08)
Vance, Chavez & Associates, LLC
320 Gold Ave. SW, Suite 1400
Albuquerque, NM 87102
(505) 842-6626