## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS

In re: GEORGE PATRICK SULIMA

      Debtor,                        No. 09-70030-HDH7

GARY STRIPLING and LOUISE PARTEN,
f/k/a LOUISE STRIPLING,

      Plaintiffs,

vs.                               Adv. Proc. No 09-07001-HDH

GEORGE PATRICK SULIMA,

      Defendant.

### CREDITORS GARY STRIPLING AND LOUISE PARTEN'S
### REPLY BRIEF IN SUPPORT OF THEIR
### MOTION FOR SUMMARY JUDGMENT ON DISCHARGEABILITY

Much of Mr. Sulima's argument depends on a blatantly false statement he makes to this Court in his brief. Contrary to what Mr. Sulima says, the New Mexico court explicitly held that "the Sulimas had an actual intent to hinder, delay or defraud the creditors." See Section 3 below.

Mr. Sulima personally stole $421,000 from his company, Shauna, Inc. He sold the company's assets, falsely claimed that he personally had valid liens on those assets, and then transferred the cash from the sale of the assets to his personal bank account. If Mr. Sulima had not taken the money, the Striplings

**1.    The Striplings obtained a judgment for fraud against a mobile home seller, Shauna, Inc. Mr. Sulima was the president and owner of Shauna, Inc. Mr. Sulima participated in the fraud upon the Striplings.**

The Striplings brought their original lawsuit against the mobile home seller, Shauna, Inc. The mobile home dealer committed fraud in the sale of the home by forcing the Striplings to

accept a home that differed from the home they ordered, then damaging the home severely upon

delivery. The arbitrator, retired New Mexico Supreme Court Justice William Riordan, awarded

$60,407.15 compensatory damages and $50,000 punitive damages, plus costs and attorney fees.

Mr. Sulima was the president and owner of Shauna, Inc. Mr. Sulima disputes that he

owned the company, on page one of his brief (¶ II-A-2). However, the state court held in its

September 29, 2008 Findings of Fact (Exhibit I), ¶ 5: "Defendants George and Shari Sulima

("the Sulimas") . . . were the sole shareholders, owners and officers of Shauna, Inc."

**2.    Mr. Sulima stole from Shauna, Inc. all the money from the sale of Shauna's assets. He had the money wired directly to his personal bank account. If he left the money in the corporate account, the Striplings would have recovered their judgment, as Shauna's creditors. The two New Mexico judgments establish all the underlying facts to prove these points.**

a.    Mr. Sulima was not an innocent bystander to the fraud committed by Shauna, Inc.

His fingerprints are all over the transaction. The arbitration established the

following facts dispositive to the Striplings' 523 complaint. Each of the findings

cited, as well as conclusion of law ¶ 2, describe the wrongful and abusive conduct

of George Sulima, which resulted in the judgment against his company. That

conduct includes:

i.    Shauna, Inc. damaged the home during delivery in July, 2003, and Mr. Sulima refused to repair the damage until November 2003. See Exhibit B, Finding of Fact ¶¶ 41, 56, 84(a).

ii.    Mr. Sulima refused to return the Striplings money when they rightfully rejected the home. See Exhibit B, Finding of Fact ¶¶ 42, 84(e)

iii.    Mr. Sulima verbally abused Ms. Stripling on the telephone. See Exhibit B, Finding of Fact ¶¶ 40, 84(f)

In addition, ¶ 82 shows Mr. Sulima's ratification of the fraud, when he "misrepresented under

oath at the arbitration hearing . . . ." See Exhibit B, Finding of Fact ¶¶ 82, 84(g).

2

Similarly, Mr. Sulima's personal conduct created the basis for the Striplings claims under

the Uniform Fraudulent Transfers Act against Shauna, Inc. The Striplings UFTA judgment is

based on the following conduct of Mr. Sulima:

iv.    Mr. Sulima, as a corporate officer of Shauna Inc. transferred the essential assets of Shauna Inc. to his personal bank accounts, even though he did not have valid liens on Shauna, Inc.'s assets. See Exhibit H, Final Judgment and Order, ¶ 3.

v.    Mr. Sulima is an insider of Shauna, Inc. See Exhibit H, Final Judgment and Order, ¶ 3.

vi.    Mr. Sulima and Shari Sulima were the sole shareholders, owners, and officers of Shauna, Inc. [1] See Exhibit H, Findings of Fact, ¶ 5.

vii.    Mr.Sulima, and his wife Shari Sulima, are the only directors of Shauna, Inc. See Exhibit H, Findings of Fact, ¶ 11.

viii.    Mr. Sulima is the president of Shauna, Inc. See Exhibit H, Findings of Fact, ¶ 12.

ix.    Mr. Sulima was the general manager of Shauna, Inc. See Exhibit H, Findings of Fact, ¶ 14.

x.    Mr. Sulima was the sole signatory on Shauna, Inc.'s checking accounts. See Exhibit H, Findings of Fact, ¶ 15.

xi.    Solitaire paid 421K to Mr. Sulima's personal bank account. See Exhibit H, Findings of Fact, ¶ 22.

xii.    Mr. Sulima reasonably should have believed at the time of the asset transfer that Shauna, Inc. was insolvent. See Exhibit H, Findings of Fact, ¶ 29.

xiii.    Mr. Sulima gave no consideration to Shauna, Inc. for its transfer of cash

---

[1]The Sulimas were the only corporate officers of Shauna, Inc. At the UFTA trial, the Sulimas' counsel argued that no evidence was presented concerning Shari Sulima's intent. Because the intent of the corporation was determined by the acts of its employees, and the only employee's actions considered in the determination of Shauna Inc's intent was Mr. Sulima's actions, Mr. Sulima's action provide the basis for the court's legal conclusion that Shauna, Inc. intended to defraud the Striplings.

assets to Mr. Sulima. See Exhibit H, Findings of Fact, ¶ 32.

xiv.    Mr. Sulima gave no consideration to Shauna, Inc. for its payment of the
Sulima's personal financial obligations. See Exhibit H, Findings of Fact, ¶
33.

xv.    Mr. Sulima deposited $236,764.50 of checks from Solitaire holdings,
LLC, for money it or its affiliated entities owed Shauna, Inc., directly into
his personal bank account. See Exhibit H, Findings of Fact, ¶¶ 38 & 39.

xvi.    Mr. Sulima never deposited into Shauna, Inc.'s corporate accounts
thousands of dollars of checks payable to Shauna, Inc. d/b/a Solitaire
Homes of Albuquerque. See Exhibit H, Findings of Fact, ¶ 41.

xvii.    In 2003 and 2004, Mr. Sulima wrote checks to himself, from Shauna,
Inc.'s bank account, totaling $189,200. See Exhibit H, Findings of Fact, ¶
49.

xviii.    Solitaire Holdings reimbursed Shauna, Inc. for various expenses by
issuing checks payable to Mr. Sulima personally, of which Mr. Sulima
deposited $236,764.50 into his personal bank account. See Exhibit H,
Findings of Fact, ¶ 53

xix.    Mr. Sulima treated Shauna, Inc.'s funds as his personal funds, and
transferred money from Shauna, Inc. without protecting its creditors. See
Exhibit H, Findings of Fact, ¶ 61.

xx.    Mr. Sulima concealed from Shauna, Inc.'s creditors the transfer of Shauna
Inc.'s assets to the Sulima's. See Exhibit H, Findings of Fact, ¶ 62.

Shauna, Inc. transferred a net amount of $379,835.03 to Mr. Sulima in 2003 and 2004.

See Exhibit H, Findings of Fact, ¶ 65. As the president and general manager of Shauna, Inc., and

as the sole signatory on Shauna, Inc.'s corporate bank accounts, Mr. Sulima personally

participated each payment involved in the fraudulent transfer of funds to Mr. Sulima's personal

accounts.

**3.    The New Mexico District Court explicitly held that Mr. Sulima intended to
defraud Shauna's creditors by stealing the money. Mr. Sulima's brief
deliberately withheld this portion of the transcript.**

Mr. Sulima's brief, page 4 (¶ V-1) states, "the Court specifically refused to find that

4

Debtor, George Sulima, intended to defraud, hinder or delay." This statement is a bald faced lie.

It is very disturbing that Mr. Sulima produced only a portion of the transcript from the court hearing. The reason he did so is because the full transcript shows that Judge Price ruled exactly the opposite of what Mr. Sulima said she ruled. The Striplings attach the full transcript of Judge Price's ruling, issued immediately after closing arguments concluded in the trial under the UFTA. See Exhibit J. Judge Price states:

> What the Sulimas did here is they treated Shauna, Inc. as their – as their personal funds, and they transferred money both back and forth without protecting the creditors of – or people that had a claim and – and I think due to that fact and the transfers that occurred there – thereof, I do enter judgment in the amount of $406,835.03, again minus the two vehicles . . . *I do believe that the Sulimas had an actual intent to hinder, delay or defraud the creditors on the claim by the Striplings.* I think this is shown by – and one thing I found very compelling was the bankruptcy documents, which clearly showed they claimed it was under a category which to the Court was not accurate, that it was a foreclosure, a transfer, that there was a – I find the liens that the Sulimas claimed were not valid liens. [emphasis added].

Exhibit J, page 3, lines 6 to 13, and line 23 to page 4, line 6. Thus, Judge Price found that Mr. and Mrs. Sulima personally intended to hinder, delay or defraud the creditors of Shauna, Inc. by (1) selling the company's assets, (2) falsely claiming that they personally had valid liens on the assets, and then (3) transferring the cash from the sale of the assets to their personal bank account.

By attempting to deceive this Court, Mr. Sulima confirms what two previous courts have held: he has and will continue to commit fraud to escape from personal liability for his acts.

4.     **Under the UFTA, the intent of the transferor is the element that must be proven. When that happens, bankruptcy courts bar discharge of the transferee. This case is typical, where a dishonest businessman cleans out his company's assets, leaving behind an empty corporate shell.**

Mr. Sulima misstates the meaning of the New Mexico court's decision that "Shauna, Inc.

violated the Uniform Fraudulent Transfer Act with intent to hinder, delay or defraud the

Striplings." Defendant's brief, page 5, ¶ V-2. One element of the UFTA is that the transfer*or*

must have the fraudulent intent. The court's ruling did not exonerate Mr. and Mrs. Sulima. It

merely followed the statute, which required a finding as to the intent of the debtor (the

transfer*or*), not the transfer*ee*. Under NMSA §56-10-18A the Striplings had to prove the

following elements, which they did successfully:

- • a transfer made or obligation incurred by a debtor
- • as to a creditor
- • whether the creditor's claim was made before or after the transfer was made or the obligation was incurred
- • if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay or defraud any creditor of the debtor.

The Striplings also successfully proved that the debtor, Shauna, Inc. violated the UFTA in a

second way. Under NMSA §56-10-19B, the following elements establish a fraudulent transfer:

- • a transfer made by a debtor
- • as to a creditor whose claim arose before the transfer was made
- • if the transfer was made to an insider
- • for an antecedent debt
- • the debtor was insolvent at that time, and
- • the insider had reasonable cause to believe that the debtor was insolvent.

See, Exhibit H (Final Judgment and Order) and Exhibit I (Court's Findings of Fact and

Conclusions of Law), particularly the conclusions of law.

The Striplings have cited case law that illustrates how bankruptcy courts treat this

situation. Mr. Sulima has not cited a single case to support his position. The business makes

fraudulent transfers to the insiders (like George and Shari Sulima). Then the transferee

(Mr.Sulima), having squandered or hidden the money, files bankruptcy. The Seventh Circuit

declares that this practice, "*is as blatant an abuse of the Bankruptcy Code as we can imagine.*"

*McClellan v. Cantrell*, 217 F.3d 890, 893 (7th Cir. 2000).

In that case, Mr. Cantrell "sold" the machinery assets of his business to his sister for $10.

His sister resold the machinery for $160,000 and would not reveal what happened to the money.

McClellan, a creditor, sued the sister under the UFTA, as the recipient of a fraudulent transfer of

assets. She filed bankruptcy, and the Court of Appeals allowed the claim for

nondischargeability. The court found that,

> The two-step routine . . . in which Debtor A transfers valuable property to B for
> nothing in order to keep it out of the hands of A's creditor and B then sells the
> property and declares bankruptcy in an effort to shield herself from liability for
> having colluded with A to defeat the rights of A's creditor – is as blatant an abuse
> of the Bankruptcy Code as we can imagine.

Mr. Sulima engaged in this exact behavior. He transferred the vehicles and equipment of

Shauna, Inc. to himself and his wife – even though they did not have lien rights to the assets –

then sold the property for $421,000, in order to defeat the rights of Shauna's creditors, the

Striplings.

The Striplings also cite *In re Shore (McCain Foods USA, Inc. v. Shore)*, 317 B.R. 536,

541 (10th Cir. BAP 2004). The Shore case, too, is on point. Mr. Shore was an officer of a

company that was insolvent. He used the last company monies to pay himself $45,000 and to

pay a loan of $79,495 on which he was a guarantor, instead of paying another legitimate

company debt. The Kansas state court found that the transfers in favor of Mr. Shore were

fraudulent under the Uniform Fraudulent Transfers Act. Mr. Shore then filed bankruptcy. The

bankruptcy court granted summary judgment in favor of the creditor, McCain, against Mr. Shore

and ruled that the debt was nondischargeable.

The same thing happened in *In the Matter of: David Wilson Morrison v. Western

Builders of Amarillo, Inc.*, 555 F.3d 473, 477 (5th Cir. 2009). Mr. Morrison was the president

and principal shareholder of his company (just like Mr. Sulima was). His company was broke,

but Mr. Morrison convinced a customer to advance payments. Mr. Morrison then

misappropriated the money. Instead of using the advances to pay for expenses related to the

customer's project, Mr. Morrison took money out of the company by having the company pay

one of his personal loans and by doubling his own salary. The company collapsed, and Mr.

Morrison filed a personal bankruptcy. The customer filed an adversary proceeding to recover

the advances and money paid under contract. The bankruptcy court held that the debt was

nondischargeable and even entered a judgment against Mr. Morrison personally.

Respectfully submitted,

_____

Feferman & Warren, Attorneys for creditors Gary Stripling and Louise Parten
Richard N. Feferman
Charles Parnall
300 Central Ave., SW, Suite 2000 East
Albuquerque, NM 87102
(505) 243-7773 phone

MILLER & MILLER, Attorneys for Plaintiffs
Stewart Ransom Miller
9310 Esplanade Dr.
Dallas, TX 75220
(214) 352-2132 phone