

*Kendra Tellez Court Reporting, Inc.*

*IN THE MATTER OF:*

*STRIPLING*

*v.*

*SHAUNA, INC.*

---

*COURT RULING*

---

*Kendra Tellez Court Reporting, Inc.*
*300 Central SW*
*Suite 1500-E*
*Albuquerque, NM 87102*
*505-243-5691   Fax 505-242-0313*

**EXHIBIT J**

## Page 1

```
Stripling,
              Plaintiff,           CV-06-625-3
    -vs-
Shauna, Inc.,
              Defendants.

              COURT'S RULING


RECORDING
TRANSCRIBED BY:    KENDRA D. TELLEZ
                   CCR 205
                   Kendra Tellez Court Reporting, Inc.
                   Suite 1500E
                   300 Central, Southwest
                   Albuquerque, New Mexico 87102




              KENDRA TELLEZ COURT REPORTING, INC.
```

## Page 2

1  THE COURT: Thank you. The first
2  thing, I do want to thank you guys for the binders.
3  I think to even try to have deal -- dealt with all
4  of these exhibits without them being organized and
5  in binders would have been impossible. So I do
6  thank the attorneys for preparation. I could tell a
7  lot of time and effort and preparation went into the
8  hearing that we've had for the last two-and-a-half
9  days, so I do thank both of you for your
10 professionalism and your organization.
11       I guess, bottom line, the Court is going
12 to rule in favor of the Plaintiffs. The Court does
13 find that. And I can go through the findings if I
14 need to. I -- one thing that I differ, I guess, is
15 that I would excerpt or take out the value of the
16 two vehicles that did not belong to -- to Shauna,
17 Inc., out of the equation.
18       The Court does find, of course, that I
19 have jurisdiction, both personal and -- and of the
20 jurisdiction -- jurisdiction. I do find that George
21 and Shari Sulima were insiders. I do find that
22 they, the Plaintiffs, were creditors, that there was
23 a claim, that it was filed.
24       I disagree, Mr. Chavez, with your -- your
25 argument that there was not a claim. It existed.

KENDRA TELLEZ COURT REPORTING, INC.

## Page 3

1  They had notice. And, again, I think the rule does
2  allow for it not being perfected or a judgment being
3  entered.
4        I do find that -- that there was a
5  transfer of funds, both through the asset transfer
6  and through just cash amounts. What the Sulimas did
7  here is they treated Shauna, Inc., as their -- as
8  their personal funds, and they transferred money
9  both back and forth without protecting the creditors
10 of -- or people that had a claim, and -- and I think
11 due to that fact and the transfers that occurred
12 there -- thereof, I do enter judgment in the amount
13 of $406,835.03, again minus the two vehicles.
14       MR. CHAVEZ: Excuse me, Your Honor,
15 that -- that -- that --
16       THE COURT: Not judgment. What I do
17 is set aside the -- okay, I'm sorry. Setting aside
18 the transfer. And again, the amount that I believe
19 they transferred fraudulently in the amount of --
20 and I'm sorry, I misstated -- $406,835.03. And I --
21 again, I do find that -- I go on to find that they,
22 as set out in the rule, that there was an actual
23 intent. I do believe that the Sulimas had an actual
24 intent to hinder, delay or defraud the creditors on
25 the claim by the Striplings. I think this is shown

KENDRA TELLEZ COURT REPORTING, INC.

## Page 4

1  by -- and one thing I found very compelling was the
2  bankruptcy documents, which clearly showed they
3  claimed it was under a category which to the Court
4  was not accurate, that it was a foreclosure, a
5  transfer, that there was a -- I find the liens that
6  the Sulimas claimed were not valid liens. Again, I
7  think they had their name on the paperwork because
8  they -- this company was their own, but I don't find
9  they had a valid lien.
10       Again, I think there's also the letter.
11 Another thing the Court found compelling to show the
12 intent was the letter by the accountant, Mr. Lane,
13 in which he stated that -- that they were filing
14 bankruptcy to -- and I forget the exact language and
15 the exact exhibit number, which -- in which he
16 talked about they were filing bankruptcy to deal
17 with dissatisfied or claims that they had against
18 them. And, again, I think that showed the intent of
19 what was told to him.
20       I find that the actual intent was shown,
21 that the transfer obligation was to an insider,
22 that -- I'm not sure if I buy that the debtor
23 retained possession or control of that property,
24 although they retained control of the cash that came
25 in and was transferred.

KENDRA TELLEZ COURT REPORTING, INC.

**Page 5**

The transfer obligation was concealed, that the transfer was made -- was made or obligations were incurred when the debtor was being sued or threatened with suit, which was clearly -- this was substantially all of the debtor's assets, that the debtor removed or concealed the assets. Again, I think he misrepresented, and I believe that then was reluctant in the course discovery in the separate lawsuit.

And, again, the debtor transferred the essential assets of the business, not Subsection 11. So I do, in essence, other than the difference in the amount, I do adopt the Plaintiffs' proposed Findings of Fact and Conclusions of Law.

Anything else the Court needs to deal with to clarify its order? Oh, I know as to the other remedies that were requested -- yes, Mr. Chavez, go ahead first.

MR. CHAVEZ: I'm sorry, Your Honor. As to the other remedies, there was no requested relief, and I forgot to say this on the closing. There was no requested relief for the receivership. I mean, it seems to me what . . .

THE COURT: In the original -- you mean in the Complaint?

KENDRA TELLEZ COURT REPORTING, INC.

**Page 6**

MR. CHAVEZ: Yes. And what -- what they have now would be a right to collect the debt.

THE COURT: Right.

MR. CHAVEZ: And not the -- not the $406,000, but -- but the judgment.

THE COURT: Whatever's owed to them.

MR. CHAVEZ: Okay. We'd like to know what -- I'm sure he's got the calculations as to -- as to what that amount is.

THE COURT: Right. And I never heard that as part of, again, what the evidence was today. I heard some things about it being offset by a bond, but I never heard what the total amount of the judgment that still remains by the Striplings is. I don't know if that --

MR. FEFERMAN: Let me address two numerical items, just so we can get close on that. One has to do with the Eric Bock vehicles. My understanding is that that's -- that's $27,000 for those two.

MR. CHAVEZ: I don't know -- I don't know the difference it makes, at this point.

MR. FEFERMAN: Oh.

THE COURT: That was just part of . . .

KENDRA TELLEZ COURT REPORTING, INC.

**Page 7**

MR. FEFERMAN: I'm just trying to come up with something so that the Court can enter her finding.

MR. CHAVEZ: The judgment was not $400,000, so there's more than enough cushion in there so that we can take in or out Mr. Bock's . . .

MR. FEFERMAN: Okay. Well, that's my understanding of -- of the amount. That's the number that sticks in my head.

THE COURT: And I wasn't quite certain. So as I looked at the Asset Purchase Agreement, the Exhibit A, I wasn't certain. I had gone back and looked at the exhibits, but I --

MR. FEFERMAN: I got that, I think, from page 80 of Mr. Lane's stuff where he listed two items. I think it was $27,000 for the Bock vehicles.

THE COURT: Whatever that value is, and hopefully you and Mr. Chavez can look at those numbers. And again, ultimately I don't know that that makes a difference.

MR. FEFERMAN: As I told Mr. Chavez last evening, in terms of the exact amount owed at this point, the original judgment was for 128 thousand, I want to say, 706 dollars, or something

KENDRA TELLEZ COURT REPORTING, INC.

**Page 8**

like that. Let's call it 128 and change. And there was -- ultimately, we collected $50,000 from the Manufactured Housing Division bond, after two years of litigation with them. So that -- let's call that $78,000.

MR. CHAVEZ: Sixty-eight thousand. $68,706.

MR. FEFERMAN: No, 78, 120 minus 50 would be 70.

MR. CHAVEZ: You're right, I'm sorry.

MR. FEFERMAN: Yeah. So it's $78,000 plus something. Interest runs from the date of judgment, which was entered -- entered by this Court on August something-or-other 2004. Is that right? 2004.

MR. CHAVEZ: Yeah.

MR. FEFERMAN: Yeah. So that's at 8 3/4s percent for three-and-a-half years, which is going to be another 20-something thousand dollars.

MR. CHAVEZ: I can do that real quick.

MR. FEFERMAN: Do 8 3/4 times 78 times 3.

MR. CHAVEZ: It is $6,965 per year.

MR. FEFERMAN: No, that can't be

KENDRA TELLEZ COURT REPORTING, INC.

**Page 9**

right. See if we can find the exact amount of judgment, would you? 78,000.

MR. CHAVEZ: Per year, per year.

MR. FEFERMAN: Oh, per year?

MR. CHAVEZ: Yeah.

MR. FEFERMAN: Oh, okay.

MR. CHAVEZ: And if we take that --

MR. FEFERMAN: That's times three point.

MR. CHAVEZ: -- that's a per diem rate of $19, $19.10.

MR. FEFERMAN: It's about a year and a third. And I'm -- I'm just guessing at this, estimating at this point. So if you multiply that times 3.3, it comes to about twenty-two five. We'll have to supply exact numbers. And then there would be -- we would ask the Court to award costs in this case. I don't have that for you right now.

THE COURT: Okay. Do we need to set a separate hearing to deal with the costs, or do you think that --

MR. CHAVEZ: I'll have to wait and see what they are.

MR. FEFERMAN: We're going -- we're going to try to work that out and maybe we can do it

**Page 10**

on briefs or something like that. But, you know, 78-something plus twenty-two five, plus some number for costs is going to be a number above a hundred thousand. But, you know, some -- I would expect it between a 100, 110.

We spent a lot on Mr. South, and I don't have a final bill and -- yes, I know it's going to kill us. But that's -- that's the vicinity that we're talking about, Your Honor. So we will -- if the Court wishes, when we get back I'll reduce that to more precise figures, send it to Mr. Chavez for his review, and try to furnish you what we agree on, or at least what we -- we contend. Okay.

THE COURT: And I do find, again, as to the receivership, Mr. Feferman, do you -- do you know if you asked for -- I see it as one of the remedies allowed by the statute, but did you request that in your Complaint?

MR. FEFERMAN: We asked for judgment and such further relief as the Court deems just. Our goal is to --

THE COURT: Other than your remedy --

MR. FEFERMAN: Yeah.

THE COURT: -- is awarded, other than the receivership.

**Page 11**

MR. FEFERMAN: Yeah.

THE COURT: Again, hopefully that's not going to be necessary.

MR. FEFERMAN: I don't know whether they're going to pay or what we're going to do. Our goal was just to collect it in a straightforward manner as we -- as we can. I don't know what happens next.

THE COURT: Anything further I need to rule on to clarify the record?

MR. CHAVEZ: No, Your Honor, nothing from the Defendants.

MR. FEFERMAN: The only other thing I would --

MR. CHAVEZ: Yes, there is one other thing.

MR. FEFERMAN: Go ahead.

MR. CHAVEZ: And that is I'd like to renew my argument for the record that -- that the judgment as to Shari Sulima shouldn't be enforced with regard to the finding of fraud, that there was no intent, no actual intent by Ms. Sulima, to do anything because she was not involved in any of the transfers.

THE COURT: And again, Mr. Chavez,

**Page 12**

I'm going to go with the previous ruling, in that it's a corporation, they're doing this as it was all, or at least the appearance to the Court, is this money went into joint accounts accessed by the family. Again --

MR. CHAVEZ: Well, I'm sorry, let me stop you there, just because I think that the -- the intent is of the transferee, the one who receives, and the transferor. The transferor is the corporation. Certainly you can find that there's intent there. There's evidence, the Court said that there was evidence of that. The transferee, the people who received it, is both George Sulima and his -- and his wife Shari.

The Court, I think, was saying that Mr. -- Mr. Sulima had the intent to receive it, but there's no evidence that Shari had the intent to receive it. So I think as to actual intent to defraud, there's no evidence as to that, as Shari Sulima is an individual receiving assets from a corporation.

THE COURT: Mr. Feferman, response.

MR. FEFERMAN: I would just note under 56-10-18a, yeah, the question is whether -- it says, "This transfer is made," et cetera, "if the debtor made this transfer or incurred this

KENDRA TELLEZ COURT REPORTING, INC.

**Page 13**

1  obligation, number one, with intent -- actual intent
2  to hinder." So it's the debtor, which was Shauna,
3  Inc.'s intent that is considered, not Mr. Sulima or
4  Mrs. Sulima's intent.
5      THE COURT: In receiving?
6      MR. FEFERMAN: Yeah.
7      THE COURT: And I did find that the
8  company, Shauna, Inc. --
9      MR. FEFERMAN: Yeah.
10     THE COURT: -- intended to defraud.
11     MR. CHAVEZ: Okay.
12     THE COURT: To hinder, delay or
13 defraud.
14     MR. FEFERMAN: The only other point I
15 would have, just -- just in terms of the record, is
16 when we originally put the exhibit book together,
17 there were some exhibits that they weren't able to
18 consent to, but I think in his opening Mr. Chavez
19 acknowledged that he didn't have any objections, and
20 I would just want to clarify that the exhibit books
21 we have with all of the exhibits are -- are part of
22 the record and are admitted.
23     THE COURT: The Court has used them.
24 I know they were never officially offered, but when
25 I asked that question at the beginning, I believed

KENDRA TELLEZ COURT REPORTING, INC.

**Page 14**

1  most were stipulated to. Are there any particular
2  exhibits, Mr. Chavez, that you did not stipulate
3  to that --
4      MR. CHAVEZ: No.
5      THE COURT: -- you wanted to argue
6  about for the record at this point.
7      MR. CHAVEZ: The letter. No. No,
8  no. And -- and it's already on the record that we
9  need the other -- the other, the previous case,
10 that's part of the record.
11     THE COURT: Yes, and I've made that
12 part of the record today. I don't know if we -- how
13 we'll do that. I'll just reference it or we'll have
14 to include the entire file as part of the record.
15 Do you guys want the binders back?

KENDRA TELLEZ COURT REPORTING, INC.

**Page 15**

1  STATE OF NEW MEXICO
2  COUNTY OF BERNALILLO
3
4      REPORTER'S CERTIFICATE
5  I, Kendra D. Tellez, New Mexico CCR #205 and
6  Notary Public within and for the State of New
7  Mexico, DO HEREBY CERTIFY that I did transcribe the
8  tape to the best of my ability; and the foregoing is
9  a true and correct transcript of the proceedings.
10 The tape was of fair quality recording.
11     I FURTHER CERTIFY that I am neither employed by
12 nor related to any of the parties or attorneys in
13 this case, and that I have no interest in the final
14 disposition of this case in any court.

_[signature]_
KENDRA D. TELLEZ, RMR/CRR
Certified Court Reporter #205
License Expires: 12/31/09

KENDRA TELLEZ COURT REPORTING, INC.